UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DANIELLE DOBIAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No: |
| ) | |
| OAK PARK AND RIVER FOREST ) | |
| HIGH SCHOOL DISTRICT 200 ) | |
| THOMAS TARRANT and ) | |
| JOHN STELZER, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

NOW COMES the Plaintiff, DANIELLE DOBIAS ("Plaintiff"), by and through her counsel, Nicholas F. Esposito, Bradley K. Staubus and Brittany N. Bermudez, and for her Complaint against Defendants, OAK PARK AND RIVER FOREST HIGH SCHOOL ("OPRF"), THOMAS TARRANT ("Tarrant"), and JOHN STELZER ("Stelzer") (collectively "Defendants"), and states as follows:

**Jurisdiction, Venue, and Parties**

1. This action is brought pursuant to: Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. § 2000e, *et seq.*).

2. This action is brought under 28 U.S.C. § 1331 because this action arises under the laws of the United States, and §1343(4) because this action arises from an Act of Congress for the protection of civil rights. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law, which rights provide for damages, injunctive and other relief for illegal discrimination in employment. This action is also brought pursuant to supplemental jurisdiction for related Illinois, county and state statutory and common

law claims.

3. Venue in this district is proper under 42 U.S.C. § 2000e-5(f) (3) and 28 U.S.C. § 1391(b) and (c) because the unlawful employment practices occurred in this district and the Defendant does business in this judicial district.

## FACTS COMMON TO ALL COUNTS

4. Plaintiff is a Cook County, Illinois resident. She is and at all relevant times was a special education teacher at OPRF and was the OPRF assistant girl's cross-country coach.

5. Defendant OAK PARK AND RIVER FOREST HIGH SCHOOL ("OPRF") is located in Cook County, Illinois.

6. At all times relevant hereto, Tom Tarrant ("Tarrant"), male, was a Special Education Behavioral Interventionist at OPRF and was the OPRF head girl's cross-country coach. His office was a short distance from Plaintiff's classroom,

7. Tarrant's Special Education Behavioral Interventionist work duties included assisting students, and special education teachers such as Plaintiff, with disruptive and/or disorderly students in Plaintiff's classroom.

8. In his capacity as head coach for the girls' cross-country team, Tarrant was also Plaintiff's supervisor

9. At all times relevant hereto, John Stelzer ("Stelzer"), male, was OPRF athletic director.

10. At all times relevant hereto, Plaintiff and Tarrant were both married to other individuals.

11. In March 2012, Tarrant told Plaintiff, "I am in love with you." Plaintiff rejected his advances.

2

12. In April 2012, Tarrant asked Plaintiff about her marriage and said, "I would be the perfect match for you." Plaintiff again rejected his advances.

13. In April 2012, Tarrant gave Plaintiff a cloth blanket, saying it was "good for fertility." Plaintiff again rejected his advances.

14. Plaintiff reported the incidents to ORPF officials. She received no response.

15. Thereafter, Tarrant, still Plaintiff's coaching supervisor and Special Education Behavioral Interventionist, began a pattern of retaliatory freeze-out against Plaintiff.

16. Tarrant asked Plaintiff if he needed to get another assistant coach for the girls' cross-country team.

17. Tarrant refused Plaintiff's requests for coach schedule changes which previously he readily allowed.

18. Tarrant conducted cross-country coach meetings without Plaintiff.

19. Plaintiff had a very good relationship with students and their parents. Tarrant removed Plaintiff's name from emails to and from parents during the cross-country season.

20. Tarrant sent an email to a school parent and another school employee that contained pornographic material. The matter was reported to male Athletic Director Stelzer. Stelzer ordered the school employee to destroy the Tarrant email.

21. At all times relevant hereto, OPRF had and maintained a student Behavior Intervention program. It included among other things, support for positive behavioral intervention. It designated and employed Behavioral Interventionists to assist students, teachers, and staff, including for the purpose of maintaining discipline in building, and on the school grounds, to ensure proper education environment. *See* 105 ILCS 14 – 8.05.

3

22. At all times relevant hereto, TARRANT, as a special education Behavioral Interventionist, had a duty to address, assist, and follow-up on Plaintiff's requests for behavioral intervention with her special education students. *See* 105 ILCS 5/24 – 24; and 105 ILCS 14 – 8.05.

23. On or after July 2012, Tarrant began ignoring Plaintiff's requests for special education behavioral intervention in her classroom, putting Plaintiff and students in danger.

24. In August 2012, Plaintiff asked Tarrant to meet with recently suspended students who were being returned to her classroom to counsel them about avoiding fights in her classroom. Tarrant ignored her request.

25. Plaintiff received a crude paper from one of her students and made a sexual gesture to her. She asked Tarrant for help. Tarrant ignored her request.

26. In September 2012, Tarrant ignored Plaintiff during girls' cross-country team practices.

27. On September 8, 2012, Tarrant refused to meet with Plaintiff for coach meetings.

28. Tarrant refused to provide Plaintiff a copy of his girls' cross-country team workout schedule.

29. On September 11, 2012, Plaintiff told Tarrant to stop asking other OPRF staff members personal questions about her. In response, Tarrant told Plaintiff she should not coach cross-country.

30. In mid September 2012, Tarrant asked others where Plaintiff was moving her residence.

31. Plaintiff and the other female assistant coach took a weekend trip. Beforehand, Tarrant asked the other female assistant coach where Plaintiff would be sleeping.

32. On September 20, 2012, Plaintiff reprimanded a student for discussing drugs in her classroom. The student walked out of class. Plaintiff emailed Tarrant asking for help. Tarrant ignored her request.

33. On September 21, 2012, Plaintiff's seventh period students stopped doing their work, saying, "You won't be here for much longer." Plaintiff sent the students to Tarrant's office for discipline. They returned laughing and said, "Everyone says you are getting fired."

34. On September 25, 2012, Plaintiff requested Tarrant's help with students in her classroom. Tarrant refused her request.

35. From October to December 2012, Tarrant continued to fail to respond to Plaintiff's requests for behavioral intervention.

36. Plaintiff continued to complain to superiors. Plaintiff was not told of any investigation. Plaintiff received no response. On information and belief, there was no investigation.

37. Instead, on October 29, 2012, while Plaintiff was still the assistant cross-country coach, she was ordered not to attend the State cross-country meet that she was to coach.

38. On November 28, 2012, Plaintiff through Human Resources requested peer mediation with Tarrant about his continued refusals to assist her in his job as a Behavioral Interventionist. Tarrant refused to do so. On information and belief, Human Resources required no corrective action from Tarrant.

39. In all of her assistant coaching reviews from Tarrant prior to July 2012, Plaintiff received "excellent" coaching performance evaluation ratings. From and after July 2012, Tarrant rated Plaintiff "good" to "satisfactory" in her coaching performance evaluation ratings.

40. On January 15, 2013 (two days after returning from Christmas break), Stelzer fired Plaintiff as assistant cross-country coach for the following year. Stelzer stated, "If the relationship improves with Tom [Tarrant], you will be able to reapply for the [assistant cross country] position." As a result of losing her assistant coaching position, Plaintiff suffered monetary loss of her assistant coach stipend, loss of prestige, embarrassment and humiliation.

41. The next day, January 16, 2013, Stelzer told Plaintiff that Tarrant refused to go over his latest assistant coach low performance evaluation with her, and that he would not be required to do so.

42. Plaintiff scheduled meetings with the then Human Resources Director on January 18 and 19, 2013 to discuss her complaints about Tarrant and Stelzer. The Human Resources Director cancelled all meetings without explanation.

43. On January 22, 2012, Plaintiff again complained to superiors for having no Behavioral Interventionist support from Tarrant in her classroom.

44. On January 23, 2013, Plaintiff complained to school officials that Tarrant stalked her while she coached the boy's track and field team.

45. In February 2013, Tarrant was removed as Plaintiff's Behavioral Interventionist, but his office remained near her 4th floor classroom. Plaintiff was told that when an issue arises requiring behavioral intervention, she must call someone on the 1st floor to assist her on the 4th floor, flagrantly putting the students and her at risk.

46. On March 1, 2013, Plaintiff was told that due to an investigation regarding her complaints against Tarrant, she was to stay away from school until she was told to return.

6

47. On March 6, 2013, Tarrant was required to sign a no-contact document about Plaintiff. However, Plaintiff was also ordered to sign a document that she would not talk to or about Tarrant or park next to him.

48. On March 15, 2013, Tarrant remained a special education Behavior Interventionist, and was still the Behavioral Interventionist with the most-immediate proximity to Plaintiff's special education classroom.

On March 15, 2013, one of Plaintiff's special education students became out-of-control, threw a computer, and yelled that he was going to "kill" Plaintiff and the students in her classroom. Believing that she and her students were in immediate danger, Plaintiff called Tarrant's assistant for help. Tarrant's assistant told Tarrant that there was an out-of-control student. Tarrant refused and failed to go to Plaintiff's aid or to send anyone else. Plaintiff was left to fend off the threatening student and to protect the other students with no assistance.

Another teacher in a nearby classroom, who is *not* a trained Behavioral Interventionist, heard the commotion, went to Plaintiff's classroom, and escorted out of the classroom all students except the threatening student. The threatening student then charged at Plaintiff.

Plaintiff, while fearing for her own safety, talked the threatening student down, but remained shaken and frightened. She complained to officials that Tarrant refused to assist her. On information and belief, nothing was done.

49. Four days later on March 19, 2013, Plaintiff was told that she would not be teaching her four (4) academic special education classes the next school year. Instead, she would be assigned four (4) study halls. No one else in the department had more than two (2) study halls. The loss of her special education classes meant Plaintiff would be removed from her regular classroom.

50. Plaintiff complained to school officials. She was told that she is "part of a messed up situation" with a "messed up guy" and that everyone wants "it to go away". In response to her question why she was being punished with a different schedule, Plaintiff was told, "it's just how it worked out."

51. On August 12-15, 2013, Plaintiff returned for the new school year. She found that she had no desk, phone, or computer.

52. On August 26, 2013, Plaintiff's email to another teacher suddenly appeared on students' screens. A school IT employee told Plaintiff that he was looking at her emails.

53. On September 16, 2013, Plaintiff was told that she would be called into a meeting with the acting Human Resources Director and Stelzer about a written complaint from Tarrant.

Tarrant falsely accused her of verbal and physical aggression and violation of the non-contact agreement.

Plaintiff became the subject of a Human Resources investigation, including being required to meet and answer questions and to make a statement about the charges. Tarrant's allegations were determined to be unfounded, and therefore false. Plaintiff still received a written reprimand.

54. On November 12, 2013, Tarrant made a second written complaint against Plaintiff.

Tarrant falsely accused her of "violations of administrative guidance regarding attendance of Danielle Dobias at the IHSA event," assault, and other matters.

Plaintiff became the subject of another Human Resources investigation, including being required to make a statement about the charges. These allegations were also determined to be unfounded, and therefore false.

55. On information and belief, Tarrant has received no reprimand, discipline or other punishment for making false allegations against Plaintiff.

56. As of the filing of this action, Tarrant is still employed at OPRF. Plaintiff has never received any response to her complaints against Tarrant other than the retaliatory incidents heretofore described.

## COUNT I
### Sexual Discrimination - Title VII of the Civil Rights Act of 1964

57. Paragraphs one through fifty-six (1-56) are incorporated herein by reference as paragraph sixty-four (57).

58. Defendants subjected Plaintiff to sexual harassment and discrimination and by otherwise perpetrating a hostile work environment toward her as a female in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

59. Defendants failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

60. As a direct and proximate result of Defendants' discrimination against Plaintiff, she has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, back pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

61. Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

62. Plaintiff also seeks preliminary and permanent including mandatory injunctive relief ordering OPRF to restore Plaintiff to her assistant coach position, and enjoining OPRF

from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants and asks that the court award her direct and consequential damages, lost wages and benefits, liquidated damages, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and preliminary and permanent including mandatory injunctive relief ordering OPRF to restore Plaintiff to her assistant coach position, and enjoining OPRF from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints, and such other relief as the Court may find appropriate.

## COUNT II
### Retaliatory Discrimination - Title VII of the Civil Rights Act of 1964

63. Paragraphs one through fifty-six (1-59) are incorporated herein by reference as paragraph sixty-three (63).

64. During Plaintiff's employment with OPRF, OPRF has engaged in and is continuing to engage in discriminatory retaliation against Plaintiff for exercising her statutory rights in complaining about discriminatory behavior by a fellow OPRF employee in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

65. As a direct and proximate result of Defendants' discrimination against Plaintiff, she has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, back pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

66. Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

67. Plaintiff also seeks preliminary and permanent including mandatory injunctive relief ordering OPRF to restore Plaintiff to her assistant coach position, and enjoining OPRF from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants and asks that the court award her direct and consequential damages, lost wages and benefits, liquidated damages, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and preliminary and permanent including mandatory injunctive relief ordering OPRF to restore Plaintiff to her assistant coach position, and enjoining OPRF from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints, and such other relief as the Court may find appropriate.

JURY TRIAL IS DEMANDED FOR ALL COUNTS

    Respectfully submitted,
**Danielle Dobias**,
Plaintiff,
By: /s/ Nicholas F. Esposito

Nicholas F. Esposito
Bradley K. Staubus
Brittany N. Bermudez
**ESPOSITO & STAUBUS LLP**
7055 Veterans Blvd., Unit B
Burr Ridge, IL 60527
312.346.2766