**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| DANIELLE DOBIAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     No: 15-cv-05594 |
| | ) |
| THE BOARD OF EDUCATION OF | ) |
| OAK PARK AND RIVER FOREST | ) |
| HIGH  SCHOOL DISTRICT 200, | ) |
| THOMAS TARRANT in his official capacity and | ) |
| separately in his individual capacity, and | ) |
| JOHN STELZER, in his official capacity and | ) |
| separately in his individual capacity. | ) |
| | ) |
| Defendants. | ) |

## AMENDED COMPLAINT

NOW COMES the Plaintiff, DANIELLE DOBIAS, by and through her counsel, Nicholas F. Esposito, Bradley K. Staubus and Brittany N. Bermudez, and for her Amended Complaint against Defendants, OAK PARK AND RIVER FOREST HIGH SCHOOL, and THOMAS TARRANT and JOHN STELZER in their official and individual capacities, collectively "Defendants", and states as follows:

### Jurisdiction, Venue, and Parties

1.      This action is brought pursuant to: Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. § 2000e, *et seq.*) arising from acts of sexual harassment, sexual discrimination and a hostile work environment, and under 42 U.S. Code § 1983 and § 1988, as amended, for committing acts, under color of state law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States, and retaliating against Plaintiff for complaining about the discriminatory conduct. This civil action seeks damages and

injunctive relief against all Defendants.  Thus, this action arises under federal law and the United

States Constitution including 42 U.S.C. Sections 1983 and 1988, as amended.

2.       The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 because this

action arises under the laws of the United States, and §1343(4) because this action arises from an

Act of Congress for the protection of civil rights.  The injunctive relief sought is authorized by 28

U.S.C. Sections 2201 and 2202, 42 U.S.C. Section 1983 and Rule 57 of the Federal Rules of Civil

Procedure.  The jurisdiction of this Court is invoked to secure protection of and redress deprivation

of rights guaranteed by federal law and the United States Constitution, which rights provide for

damages, injunctive and other relief for illegal discrimination in employment.

3.       Venue in this district is proper under 42 U.S.C. § 2000e-5(f) (3) and 28 U.S.C. §

1391(b) and (c) because the alleged conduct occurred in this district and the Defendant does

business in this judicial district.

## FACTS COMMON TO ALL COUNTS

4.       Plaintiff, DANIELLE DOBIAS ("Plaintiff"), female, is a Cook County, Illinois

resident.  She is and at all relevant times was and remains a *tenured* special education teacher at

OPRF, and she was the OPRF assistant girl's cross-country coach.

5.       Defendant, OAK PARK AND RIVER FOREST HIGH SCHOOL ("OPRF"), is

located in Cook County, Illinois, is a corporate body and a political subdivision of the State of

Illinois and a "person" subject to suit within the meaning of 42 U.S.C. Section 1983, and at all

times relevant hereto acted under color of state law.

6.       At all times relevant hereto, TOM TARRANT ("Tarrant"), male, was a Special

Education Behavioral Interventionist at OPRF and was the OPRF head girl's cross-country coach.

He is sued for damages in his individual capacity and for injunctive relief in his official capacity

within the meaning of 42 U.S.C. Section 1983, and at all times relevant hereto acted under color of state law.  His office was a short distance from Plaintiff's classroom.

7.      Tarrant's Special Education Behavioral Interventionist work duties included assisting students, and special education teachers such as Plaintiff, with disruptive and/or disorderly students in Plaintiff's classroom.

8.      In his capacity as head coach for the girls' cross-country team, Tarrant was also Plaintiff's supervisor

9.      At all times relevant hereto, John Stelzer ("Stelzer"), male, was the OPRF athletic director, and Tarrant and Plaintiff's supervisor.  He is sued for damages in his individual capacity and for injunctive relief in his official capacity within the meaning of 42 U.S.C. Section 1983, and at all times relevant hereto acted under color of state law.

10.     At all times relevant hereto, Plaintiff and Tarrant were both married to other individuals.

11.     In 2011, Tarrant awarded Plaintiff the Girls' Cross Country MVP Award, which was typically given to student-athletes.

12.     Tarrant told Plaintiff that his own wife's email address was "bigbitch@aol.com". In March 2012, Tarrant told Plaintiff, "I am in love with you."  Plaintiff rejected his advances.

13.     In March 2012, Tarrant asked Plaintiff about her marriage and said, "I would be the perfect match for you."  Plaintiff again rejected his advances.

14.     Plaintiff informed Courtney Sakellaris ("Sakellaris"), Assistant Athletic Director, about Tarrant's unwanted sexual advances. On information and belief, no investigation was conducted to look into Tarrant's behavior towards his subordinate, Plaintiff.

15.    In April 2012, Tarrant gave Plaintiff a cloth blanket, saying it was "good for fertility."   Plaintiff again rejected his advances.

16.    In late- July 2012, Tarrant asked Plaintiff if he needed to get another assistant coach for the girls' cross-country team.

17.    Thereafter, Tarrant, still Plaintiff's coaching supervisor and Special Education Behavioral Interventionist, and Stelzer in their individual capacity, and other OPRF officials including but not limited to Human Representatives, began a continuing policy, custom, pattern and/or pattern of violating statutorily and constitutionally protected rights in the form of sexual harassment, sexual discrimination, and retaliation for Plaintiff's exercise of her statutory and constitutional rights.

18.    The officials including Tarrant, Stelzer, Athletic Department representatives, and Human Resources representatives had policy making authority and/or exercised policy-making authority.  Through their intentional action and/or inaction, OPRF violated Plaintiff's statutory and constitutional rights.

19.    Tarrant and Stelzer in their individual capacity caused or personally participated in the continuing policy, custom, pattern and/or pattern of sexual harassment, discrimination including inaction, retaliatory freeze-out and punishment against Plaintiff.

20.    Plaintiff reported the incidents to ORPF officials.  She received no response.   On information and belief, no investigation was conducted to look into Tarrant's behavior towards his subordinate, Plaintiff.

21.    In August 2012, Tarrant refused Plaintiff's requests for coach schedule changes which previously he readily allowed.

22.     Tarrant conducted several cross-country coach meetings without Plaintiff and without her knowledge of said meetings.

23.     Plaintiff had a very good relationship with students and their parents. From and after Fall Semester 2012, when parents and/or coaches emailed Plaintiff, Tarrant and the other coaches during the cross-country season, Tarrant when responding would remove Plaintiff's name, and not the other copied individuals' names, from the emails.

24.     In or around August/September 2013, Tarrant sent an email to a school parent and another school employee that contained pornographic material. The matter was reported to Laura Faber ("Faber"), Special Education Division Director, and male Athletic Director, Stelzer. Stelzer ordered the school employee to destroy the Tarrant email. On information and belief, the matter was not investigated by OPRF.

25.     At all times relevant hereto, OPRF had and maintained a student Behavior Intervention program. It included among other things, support for positive behavioral intervention. It designated and employed Behavioral Interventionists to assist students, teachers, and staff, including for the purpose of maintaining discipline in building, and on the school grounds, to ensure proper education environment. *See* 105 ILCS 14 – 8.05.

26.     At all times relevant hereto, Tarrant, as a special education Behavioral Interventionist, had a school required duty imposed by state law to address, assist, and follow-up on Plaintiff's requests for behavioral intervention with her special education students. *See* 105 ILCS 5/24 – 24; and 105 ILCS 14 – 8.05.

27.     From and after August 2012, Tarrant began ignoring Plaintiff's requests for special education behavioral intervention in her classroom, putting Plaintiff and students in danger.

28.     In August 2012, Plaintiff asked Tarrant to meet with recently suspended students who were being returned to her classroom to counsel them about avoiding fights in her classroom. Tarrant ignored her request.

29.     Also in August 2012, Plaintiff received a crude paper from one of her students and whom had also made a sexual gesture to her.  She asked Tarrant for help.  Tarrant ignored her request.

30.     From and after September 2012, Tarrant ignored Plaintiff during girls' cross-country team practices.

31.     From and after September 2012, Tarrant did not inform Plaintiff of practice location changes. Plaintiff often had to contact another assistant coach to determine where the team was practicing.

32.     In or around early-September 2012, Tarrant refused to provide Plaintiff a copy of his girls' cross-country team workout schedule.  Tarrant also told Plaintiff she should not coach cross-country.

33.     On September 8, 2012, Tarrant refused to meet with Plaintiff for coach meetings.

34.     On September 11, 2012, Plaintiff told Tarrant to stop asking other OPRF staff personal questions about her.

35.     In mid-September 2012, Tarrant continued to ask other employees personal questions about Plaintiff.

36.     Plaintiff and the other female assistant coach took a weekend trip.  Beforehand, Tarrant asked the other female assistant coach where Plaintiff would be sleeping.

37.     On September 20, 2012, Plaintiff reprimanded a student for discussing drugs in her classroom.  The student walked out of class.  Plaintiff emailed Tarrant asking for help.  Tarrant

ignored her request. Prior to this date, Plaintiff had requested behavioral intervention support from Tarrant about the same student. Tarrant ignored her request.

38.     On September 21, 2012, Plaintiff's seventh period students stopped doing their work, saying, "You won't be here for much longer." Plaintiff sent the students to Tarrant's office for discipline. They returned laughing and said, "Everyone says you are getting fired."

39.     On September 25, 2012, Plaintiff requested Tarrant's help with students in her classroom. Tarrant refused her request.

40.     Plaintiff reported the matter to her superiors. On information and belief, there was no investigation, a violation of written school policy.

41.     On October 9, 2012, Plaintiff informed her superior that Tarrant had told her previously that he was in love with her in April 2012. On information and belief, there was no investigation.

42.     On October 11, 2012, Plaintiff discussed Tarrant's retaliatory behavior with Assistant Athletic Director, Sakellaris. In response, Sakellaris informed her that "you should have seen it coming with [Tarrant] because it was obvious he had feelings for you". She also advised Plaintiff to start telling people that "you have a boyfriend" and that "if you think that [another male head coach] isn't going to try and f*** you, you are an idiot".

43.     From October to December 2012, Tarrant continued to fail to respond to Plaintiff's requests for behavioral intervention, in violation of school policy and Illinois state law. Plaintiff's students regularly walked out of her class, knowing that there will be no consequences.

44.     On October 24, 2012, Plaintiff attended a meeting with individuals from Human Resources. During the meeting Plaintiff complained that Tarrant was retaliating against her for rejecting his sexual advances.

45.     Plaintiff continued to complain to superiors.   Plaintiff was not told of any investigation. Plaintiff received no response. On information and belief, there was no investigation, a violation of written school policy.

46.     Instead, on October 29, 2012, while Plaintiff was still the assistant cross-country coach, she was punished and ordered by Stelzer not to attend the State cross-country meet that was she was to coach as Tarrant's assistant, without any stated reason or hearing.

47.     In November 2012, Tarrant punished Plaintiff, the previous year's MVP Award winner, with an extremely poor coaching evaluation. She requested to meet with Stelzer and Tarrant to discuss the evaluation. Stelzer met with Plaintiff. Contrary to OPRF practice, Tarrant, her supervisor, refused to meet with Plaintiff.

48.     On November 28, 2012, Plaintiff through Human Resources requested peer mediation with Tarrant about his continued refusals to assist her in his job as a Behavioral Interventionist.  Tarrant refused to mediate.  On information and belief, Human Resources required no corrective action from Tarrant, thereby sanctioning his violation of school policy and Illinois state law.

49.     In all of her assistant coaching reviews from Tarrant prior to July 2012, Plaintiff received "excellent" coaching performance evaluation ratings.  Despite knowing that Planitiff had made numerous charges and complaints against Tarrant, Stelzer allowed Tarrant to continue to evaluate her coaching performance.  From and after July 2012, Tarrant in retaliation against Plaintiff, for the first time, rated Plaintiff "good" to "satisfactory" in her coaching performance evaluation ratings.

50.     In mid-December, Plaintiff contacted her superior asking for assistance, as Tarrant was ignoring her requests for Behavioral Intervention

51.     Without notice or hearing, on January 15, 2013 (two days after returning from Christmas break), Stelzer fired Plaintiff from her paid assistant cross-country coach for the following year without any stated performance reason, other than her complaints about Tarrant. Stelzer stated, "If the relationship improves with Tom [Tarrant], you will be able to reapply for the [assistant cross country] position." As a result of Stelzer firing Plaintiff from her assistant coaching position, she suffered monetary loss of her assistant coach stipend, loss of prestige, embarrassment and humiliation.

52.     The next day, January 16, 2013, Stelzer informed Plaintiff that Tarrant refused to discuss her latest assistant coach low performance evaluation with her. In clear deference to Tarrant, Stelzer stated that he would not require Tarrant to do so.

53.     Also on January 16, 2012, Plaintiff told Stelzer that Tarrant had previously told her that he was "in love with [her]". She also informed Stelzer that Tarrant was retaliating against her for rejecting his sexual advances. On information and belief, Stelzer conducted no investigation.

54.     Plaintiff scheduled meetings with the then Human Resources Director on January 18 and 19, 2013 to discuss her complaints about Tarrant and Stelzer. The Human Resources Director cancelled all meetings without explanation and never provided Plaintiff with any response or recourse, in violation of written school policy.

55.     On January 22, 2012, Plaintiff again complained to superiors for having no Behavioral Interventionist support from Tarrant in her classroom.

56.     On January 23, 2013, Plaintiff complained to school officials that Tarrant continued his sexual harassment by stalking her while she coached the boy's track and field team. On information and belief, the matter was not investigated and Plaintiff was never informed of any outcome, in violation of school policy

57.   In early February 2013, Tarrant was removed as Plaintiff's Behavioral Interventionist, but his office remained on the same floor—two doors down—as from Plaintiff's 4th floor classroom.   Rather than correct Tarrant's refusal to provide Plaintiff his behavioral interventionist support, school officials told her that when an issue arises requiring behavioral intervention, she must call someone on the 1st floor to travel to the 4th floor, a safety threat. However, Plaintiff was also told if there was an emergency, Plaintiff was to seek support from whomever was closest, which was Tarrant.

58.   On March 1, 2013, Plaintiff was punished for complaining about Tarrant in that she was told that, due to an investigation regarding her complaints against Tarrant, she was to stay away from school until she was told to return.   There was no other stated reason or hearing.   She suffered further embarrassment and humiliation.

59.   On March 6, 2013, Tarrant was required to sign a no-contact document about Plaintiff.   Although not being accused of any wrongdoing, without any stated reason or hearing, Plaintiff was punished by an interim Human Resources director who ordered Plaintiff to sign a document that she would not talk to or about Tarrant or park next to him,.

60.   On March 15, 2013, Tarrant remained a special education Behavior Interventionist. He was still the Behavioral Interventionist on the same floor as and with the closest to Plaintiff's special education classroom.

61.   On March 15, 2013, one of Plaintiff's special education students became out-of-control, and threw a computer.   He yelled that he was going to "kill" Plaintiff and the students in her classroom.   Believing that she and her students were in immediate danger, Plaintiff as instructed first called the 1st floor for assistance, but no one was available to assist her. As instructed, Plaintiff called Tarrant for help with an out-of-control student and

10

explained that she had called 1st floor for help, that she was not able to reach anyone, and that she needed his immediate assistance. Tarrant refused and failed to go to Plaintiff's aid or to send anyone else.

Another male teacher in a nearby classroom, who is *not* a trained Behavioral Interventionist, heard the commotion which could he heard all the way down the hallway, went to Plaintiff's classroom, and escorted out of the classroom all students except the threatening student. The threatening male student then charged at Plaintiff. Plaintiff was left to fend off the threatening student with no assistance. Plaintiff, while fearing for her own safety, talked the threatening student down, but remained shaken and frightened. Plaintiff complained to officials that Tarrant refused to assist her. On information and belief, nothing was done.

62.     Four days later on March 19, 2013, in yet further retaliation for her complaints, OPRF officials informed Plaintiff that she would not be teaching her four (4) academic special education classes the next school year. Instead, she would be assigned four (4) study halls. No one else in the department had more than two (2) study halls. The loss of her special education classes meant Plaintiff would be removed from her regular classroom. She received no explanation and no hearing. On information and belief, Tarrant retained his various school positions.

63.     Plaintiff again complained to school officials. A school administrator told Plaintiff that she is "part of a messed up situation" with a "messed up guy" and that everyone wants "it to go away". In response to her question why she was being punished with a different schedule, Plaintiff was told, "it's just how it worked out."

64.     On August 12-15, 2013, Plaintiff returned for the new school year as a tenured teacher. In renewed retaliation, OPRF provided her a different office, but with no desk, no phone,

or no computer. Plaintiff was the only special education teacher in the department to not be provided these things.

65.     On August 26, 2013, Plaintiff's email to another teacher suddenly appeared on students' screens. A school IT employee told Plaintiff that he was looking at her emails.

66.     On September 16, 2013, Plaintiff was told that she would be called into a meeting with the acting Human Resources Director and Stelzer about a written complaint from Tarrant.

67.     Tarrant, with Stelzer's assistance, input, and concurrence, conspired to falsely accuse Plaintiff of verbal and physical aggression and violation of the non-contact agreement.

68.     Plaintiff became the subject of a Human Resources investigation initiated by the Interim Director of Human Resources. She was required to meet and answer questions and to make a statement about the charges. Tarrant's allegations were determined to be *unfounded*, and therefore false. For no reason, Plaintiff received a written reprimand without a hearing. School officials never provided Plaintiff the same investigatory rights afforded to Tarrant for his false allegations.

69.     Buoyed by the school's quick action on his prior false allegations, on November 12, 2013, Tarrant made a second false written complaint against Plaintiff.

70.     Tarrant, with Stelzer's assistance, input, and concurrence, conspired to falsely accuse Plaintiff of "violations of administrative guidance regarding attendance of Danielle Dobias at the IHSA event," assault, and other matters.

71.     Plaintiff became the subject of another Human Resources investigation, including being required to make a statement about the charges. These allegations were also determined to be unfounded, and therefore false.

72.     On information and belief, Tarrant has received no reprimand, discipline or other punishment for twice making false allegations against Plaintiff.

73.     As of the filing of this action, Tarrant and Stelzer are still employed at OPRF. Plaintiff has never received any response to her complaints against Tarrant other than the retaliatory incidents heretofore described.

## COUNT I
### Sex Discrimination Pursuant to Title VII of the Civil Rights Act of 1964
(Against ORPF)

74.     Paragraphs one through seventy-three (1-73) are incorporated herein by reference as paragraph seventy-four (74).

75.     Plaintiff was a member of a protected class, female, who had been satisfactorily performing her job duties. Defendant OPRF failed to investigate and/or adequately investigate Plaintiff's complaints, while fully investigating Tarrant's unfounded complaints against her.

76.     Plaintiff was discharged as assistant coach and was replaced by a less qualified male employee.

77.     While Plaintiff lost special education classes, lost her classroom, office, and other equipment, and instead was given study halls, at the same time, male employee special education instructors did not suffer such losses.

78.     OPRF failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate the sex discrimination from the workplace and to prevent it from occurring in the future in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

79.     As a direct and proximate result of Defendant OPRF's discrimination against Plaintiff, she has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and

business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

80.     Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

81.     Plaintiff also seeks preliminary and permanent including mandatory injunctive relief ordering OPRF to restore Plaintiff to her assistant coach position, and enjoining OPRF from engaging in any further retaliatory action against Plaintiff arising from her sex discrimination complaints.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant and asks that the court award her direct and consequential damages, lost wages and benefits, liquidated damages, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and preliminary and permanent including mandatory injunctive relief ordering OPRF to restore Plaintiff to her assistant coach position, and enjoining OPRF from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints, and such other relief as the Court may find appropriate.

## COUNT III
### Sexual Harassment Pursuant to Title VII of the Civil Rights Act of 1964
### (Against ORPF)

82.     Paragraphs one through eighty-one (1 - 81) are incorporated herein by reference as paragraph eighty-two (82).

83.     Pursuant to § 1604.11 Sexual harassment:

(a)  Harassment on the basis of sex is a violation of section 703
     of title VII.   Unwelcome sexual advances, requests for

14

sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

(b) In determining whether alleged conduct constitutes sexual harassment, the Commission will look at the record as a whole and at the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred. The determination of the legality of a particular action will be made from the facts, on a case by case basis.

(c) With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action.

84. Plaintiff was subjected to continuous unwanted sexual advances and harassment by Tarrant, her supervisor, which perpetrated a hostile work environment based upon her sex, female, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The sexual harassment created an objectively hostile work environment and Plaintiff perceived it as such.

85. Such conduct affected the terms, conditions, and/or privileges of Plaintiff's employment with OPRF in that the harassment unreasonably interfered with her work performance and/or created an intimidating, hostile and/or offensive work environment.

86. Plaintiff informed OPRF of Tarrant's unwanted sexual advances and subsequent

15

harassment.

87.     Defendant OPRF through its supervisors, employees and agents engaged in unlawful sexual advances and other discriminatory conduct constituting quid pro quo harassment wherein Plaintiff's rejection of sexual harassment and failure to adequately to investigate her complaints of sexual harassment, and thereby unreasonably interfered with her work performance, and/or created an intimidating, hostile, or offensive work environment, and her rejections and numerous complaints of such conduct were and continue to be used as the basis for employment decisions affecting Plaintiff, including economic loss.

88.     Despite Plaintiff's complaints to OPRF, such conduct was condoned, approved and encouraged by OPRF and Stelzer, who, while informed of such conduct, took no steps to correct the sexual harassment, which forced Plaintiff to submit to such further conduct.

89.     OPRF failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate sexual harassment from the workplace and to prevent it from occurring in the future in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

90.      As a direct and proximate result of OPRF's discrimination against Plaintiff, she has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

91.     Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

16

92.     Plaintiff also seeks preliminary and permanent including mandatory injunctive relief ordering OPRF to restore Plaintiff to her assistant coach position, and enjoining OPRF from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant and asks that the court award her direct and consequential damages, lost wages and benefits, liquidated damages, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and preliminary and permanent including mandatory injunctive relief ordering OPRF to restore Plaintiff to her assistant coach position, and enjoining OPRF from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints, and such other relief as the Court may find appropriate.

**COUNT III**
**Retaliatory Discrimination Pursuant to Title VII**
**of the Civil Rights Act of 1964**
**(Against OPRF)**

93.     Paragraphs one through ninety-two (1-92) are incorporated herein by reference as paragraph ninety-three (93).

94.     During Plaintiff's employment with OPRF, she engaged in statutorily protected expression.

95.     As a result of engaging in such statutorily protected expression, Plaintiff was subjected to adverse employment actions, which affected the terms and conditions of her employment as a tenured special education teacher and girls' assistant cross country coach.

96.     Defendant OPRF engaged in and is continuing to engage in discriminatory retaliation against Plaintiff for exercising her statutory rights in complaining about discriminatory and harassment by a fellow OPRF employee, in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e.

97.     There is a causal link between Plaintiff's statutorily protected expression and the adverse employment action.

98.     As a direct and proximate result of Defendant OPRF's discrimination against Plaintiff, she has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

99.     Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

100.    Plaintiff also seeks preliminary and permanent including mandatory injunctive relief ordering Defendant OPRF to restore Plaintiff to her assistant coach position, and enjoining OPRF from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants and asks that the court award her direct and consequential damages, lost wages and benefits, liquidated damages, back pay, reasonable statutory attorneys' fees, expert witness fees, and costs, and preliminary and permanent including mandatory injunctive relief ordering Defendant OPRF to restore Plaintiff to her assistant coach position, and enjoining Defendant OPRF from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints, and such other relief as the Court may find appropriate.

<u>COUNT IV</u>
**Constitutional and Civil Rights Pursuant
to 42 U.S.C. §§ 1983, 1988 Violation of the Fourteenth Amendment-
Equal Protection Prohibiting Sexual Harassment
(Against OPRF)**

101.     Paragraphs one through one hundred (1-100) are incorporated herein by reference as paragraph one hundred one (101).

102.     Defendant OPRF's conduct is violative of the Fourteenth Amendment of the U.S. Constitution's equal protection/right to be free from sex discrimination, which includes sexual harassment, and retaliation arising therefrom, to wit:

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress."

103.     Defendant OPRF engaged in a widespread, unwritten, custom and/or practice to disregard clearly writing policies prohibiting sexual harassment, including but not limited to disregard for required investigatory processes, and retaliation for reporting discrimination, and/or that decisions were made by Defendant OPRF agents with final policymaking authority contrary to express requirements prohibiting discrimination and retaliation.

104.     Defendant OPRF, acting under color of state law, deprived Plaintiff of her constitutional rights and/or acted intentionally and/or with callous disregard for Plaintiff's clearly established constitutional rights.

105.     As a direct and proximate result of Defendant OPRF's discrimination against Plaintiff, she has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and

business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

106.    Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

107.    Plaintiff also seeks preliminary and permanent including mandatory injunctive relief ordering Defendant OPRF to restore Plaintiff to her assistant coach position, and enjoining Defendant OPRF from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints.

## COUNT V
### Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988 Violation of the Fourteenth Amendment-Equal Protection Based Upon Sex Discrimination (Against OPRF)

108.    Paragraphs one through one hundred seven (1-107) are incorporated herein by reference as paragraph one hundred eight (108).

109.    Defendant OPRF violated Plaintiff's Fourteenth Amendment equal protection rights by allowing her to be subjected to sex discrimination, to wit:

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress."

110.    Defendant OPRF engaged in a widespread, unwritten, custom and/or practice to disregard clearly writing policies prohibiting sexual harassment, including but not limited to disregard for required investigatory processes, and retaliation for reporting discrimination, and/or

that decisions were made by Defendant OPRF agents with final policymaking authority contrary to express requirements prohibiting discrimination and retaliation.

111.    Defendant OPRF, acting under color of state law, deprived the Plaintiff of her constitutional rights and/or acted intentionally and/or with callous disregard for Plaintiff's clearly established constitutional rights, and/ or that it treated her differently than male employees similarly situated and with is no rational basis for the difference in treatment.

112.    As a direct and proximate result of Defendant OPRF's discrimination against Plaintiff, she has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

113.    Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

114.    Plaintiff also seeks preliminary and permanent including mandatory injunctive relief ordering Defendant OPRF to restore Plaintiff to her assistant coach position, and enjoining Defendant OPRF from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints.

## COUNT VI
**Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988 Violation
of the Fourteenth Amendment-Equal Protection Based Upon Sex Discrimination
(Against Tarrant and Stelzer in Their Official Capacities)**

115.    Paragraphs one through one hundred fourteen (1-114) are incorporated herein by reference as paragraph one hundred fifteen (115).

116.     Tarrant and Stelzer violated Plaintiff's Fourteenth Amendment equal protection rights by subjecting her to sex discrimination, to wit:

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress."

117.     Tarrant and Stelzer each had final policymaking authority. Each acted under color of state law, engaged in a policy, custom and/or practice of condoning sex discrimination based upon Plaintiff's sex, which deprived Plaintiff of her constitutional rights. Tarrant and Stelzer caused and/or personally participated in the statutory and/or constitutional violation decisions against the interest of Plaintiff.

118.     As a direct and proximate result of Tarrant and Stelzer's discrimination against Plaintiff, she has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

119.     Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

120.     Plaintiff also seeks preliminary and permanent including mandatory injunctive relief ordering Tarrant and Stelzer to restore Plaintiff to her assistant coach position, enjoining Tarrant and Stelzer from engaging in any further sex discrimination against Plaintiff, and enjoining

22

Tarrant and Stelzer from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints.

<u>COUNT VII</u>
**Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988 Violation
of the Fourteenth Amendment-Equal Protection Based Upon Sex Discrimination
(Against Tarrant and Stelzer in Their Individual Capacities)**

121.    Paragraphs one through one hundred twenty (1-120) are incorporated herein by reference as paragraph one hundred twenty-one (121).

122.    Tarrant and Stelzer violated Plaintiff's Fourteenth Amendment equal protection rights by subjecting her to sex discrimination, to wit:

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress."

123.     Tarrant intentionally caused and/or participated in discriminating against Plaintiff based on her sex.

124.    Stelzer intentionally discriminated against Plaintiff by failing to take action against Tarrant who had sexually discriminated against Plaintiff based on her sex, and by allowing him to replace Plaintiff with a less qualified male coach.

125.    As a direct and proximate result of Tarrant and Stelzer's discrimination against Plaintiff, she has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, punitive damages,  extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory

damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

126. Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

127. Plaintiff also seeks preliminary and permanent including mandatory injunctive relief ordering Tarrant and Stelzer to restore Plaintiff to her assistant coach position, enjoining Tarrant and Stelzer from engaging in any further sex discrimination against Plaintiff, and enjoining Tarrant and Stelzer from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints.

### COUNT VIII
**Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988 Violation of the Fourteenth Amendment-Equal Protection Based Upon Sexual Harassment (Against Tarrant and Stelzer in Their Official Capacities)**

128. Paragraphs one through one hundred twenty-seven (1-127) are incorporated herein by reference as paragraph one hundred twenty-eight (128).

129. Defendants Tarrant and Stelzer violated Plaintiff's Fourteenth Amendment equal protection rights by subjecting her to a hostile environment of quid pro quo sexual harassment, to wit:

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress."

130. Tarrant and Stelzer each engaged in a widespread, unwritten, custom and/or practice to disregard clearly writing policies prohibiting sexual harassment, including but not limited to disregard for required investigatory processes, and retaliation for reporting

discrimination, and/or that decisions were made by Defendant OPRF agents with final policymaking authority contrary to express requirements prohibiting discrimination and retaliation.

131.    Tarrant and Stelzer, acting under color of state law, deprived the Plaintiff of her constitutional rights and/or acted intentionally and with callous disregard for Plaintiff's clearly established constitutional rights, and/ or that they treated her differently than male employees similarly situated and with is no rational basis for the difference in treatment.

132.    The constitutional injury was caused by Tarrant and Stelzer, who each had final policymaking authority.

133.    Tarrant directly caused and/or participated in the sexual harassment.

134.    Stelzer acted and/or failed to act with deliberate or reckless disregard of Plaintiff's constitutional rights afforded to her by the Fourteenth Amendment, or in the alternative, Stelzer knew about Tarrant's conduct towards Plaintiff, facilitated it, approved it, condoned it, and/or turned a blind eye to it by not investigating the complaints.

135. As a direct and proximate result of Tarrant and Stelzer's discrimination against Plaintiff, she has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

136.    Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

137.    Plaintiff also seeks preliminary and permanent including mandatory injunctive relief ordering Tarrant and Stelzer to restore Plaintiff to her assistant coach position, and enjoining Tarrant and Stelzer from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints.

**COUNT IX**
**Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988 Violation of the Fourteenth Amendment-Equal Protection Based Upon Sexual Harassment (Against Tarrant and Stelzer in Their Individual Capacities)**

138.    Paragraphs one through one hundred thirty-seven (1-137) are incorporated herein by reference as paragraph one hundred thirty-eight (138).

139.    Defendants Tarrant and Stelzer each violated Plaintiff's Fourteenth Amendment equal protection rights by subjecting her to a hostile environment of sexual harassment, to wit:

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress."

140.    Tarrant both intended to and did sexually harass Plaintiff based on her sex.

141.    Stelzer both intended to and did act and/or fail to act with deliberate or reckless disregard of Plaintiff's constitutional rights afforded to her by the Fourteenth Amendment, or in the alternative, Stelzer knew about Tarrant's conduct towards Plaintiff, facilitated it, approved it, condoned it, and/or turned a blind eye to it by not investigating the complaints.

142.    As a direct and proximate result of Tarrant and Stelzer's discrimination against Plaintiff, she has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, punitive damages, extreme and

26

severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

143.    Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

144.    Plaintiff also seeks preliminary and permanent including mandatory injunctive relief ordering Tarrant and Stelzer to restore Plaintiff to her assistant coach position, and enjoining Tarrant and Stelzer from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints.

## COUNT X
### Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988
### Violation of the Fourteenth Amendment-Equal Protection Prohibiting Retaliation for
### Reporting Sex Discrimination and/or Sexual Harassment
### (Against OPRF)

145.    Paragraphs one through one hundred forty-four (1-144) are incorporated herein by reference as paragraph one hundred forty-five (145).

146.    Defendant OPRF's conduct is violative of the Fourteenth Amendment of the U.S. Constitution's equal protection/right to be free from retaliation arising from reporting sex discrimination and/or sexual harassment, to wit:.

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress."

27

147. Defendant OPRF engaged in a widespread, unwritten, custom and/or practice to disregard clearly writing policies prohibiting sexual harassment, including but not limited to disregard for required investigatory processes, and retaliation for reporting discrimination and/or harassment, and/or that decisions were made by Defendant OPRF's agents with final policymaking authority contrary to express requirements prohibiting discrimination and retaliation. Defendant OPRF also failed to adequately train OPRF staff about policies prohibiting harassment and discrimination on the basis of sex, female, and retaliation. This failure to train caused Plaintiff to be subjected to discrimination and harassment on the basis of sex, female, and retaliation.

148. As a direct and proximate result of Defendant OPRF's discrimination against Plaintiff, she has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

149. Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

150. Plaintiff also seeks preliminary and permanent including mandatory injunctive relief ordering Defendant OPRF to restore Plaintiff to her assistant coach position, and enjoining OPRF from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints.

<u>COUNT XI</u>
**Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988**
**Violation of the Fourteenth Amendment-Equal Protection Prohibiting Discrimination and**
**Retaliation for Reporting Sex Discrimination and/or Harassment**
**(Against Tarrant and Stelzer in their Official Capacities)**

151.    Paragraphs one through one hundred fifty (1-150) are incorporated herein by reference as paragraph one hundred fifty-one (151).

152.     Tarrant and Stelzer, each acting under color of state law, had actual knowledge that there was discrimination and harassment based on sex, female, and retaliation, and Tarrant and Stelzer were/are personally responsible for the deprivation of a constitutional right, knew about and/or facilitated the prohibitive conduct, approve it, condone it, or turned a blind eye to it, such that it was so severe, pervasive, and objectively offensive that it created a hostile climate that deprived Plaintiff of her constitutional rights and liberties and access to income, benefits, programs, activities, and opportunities.

153.    The practices, policies, or customs of Tarrant and Stelzer, as individuals with final policymaking authority, have engaged in, contributed to and continue to engage and contribute to a retaliatory environment against a female employee complaining violation of statutory and constitutional rights.

154.    Stelzer also failed to adequately train OPRF staff about policies prohibiting harassment and discrimination on the basis of sex, female, and retaliation.  This failure to train caused Plaintiff to be subjected to discrimination and harassment on the basis of sex, female, and retaliation.

155.    The violations of Plaintiff's rights under the Fourteenth Amendment by each of the Defendants named in this claim were the actual, direct, and proximate cause of injuries suffered by Plaintiff as alleged.

156.     As a direct and proximate result of Defendants' discrimination against Plaintiff, she has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.  Plaintiff is also entitled to and seeks one million dollars ($1,000,000) punitive damages against each of Tarrant and Stelzer in their individual capacity.

157.     Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

158.     Plaintiff also seeks preliminary and permanent including mandatory injunctive relief ordering Tarrant and Stelzer to restore Plaintiff to her assistant coach position, and enjoining Tarrant and Stelzer from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints.

### COUNT XII
**Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988**
**Violation of the Fourteenth Amendment-Due Process in Reporting Complaining**
**Discrimination and Retaliation for Reporting Discrimination**
**(Against Tarrant and Stelzer in their Individual Capacities)**

159.     Paragraphs one through one hundred fifty-eight (1-158) are incorporated herein by reference as paragraph one hundred fifty-nine (159).

160.     Tarrant and Stelzer are each final policy-makers and decision-makers for OPRF and set custom and policy for OPRF's athletic department.

161.    Tarrant both intended to and did retaliate against Plaintiff based on her complaints of discrimination and/or harassment against him.

162.    Stelzer both intended to and did act and/or fail to act with deliberate or reckless disregard of Plaintiff's constitutional rights afforded to her by the Fourteenth Amendment, or in the alternative, Stelzer knew about Tarrant's retaliatory conduct towards Plaintiff, facilitated it, approved it, condoned it, and/or turned a blind eye to it by not investigating and/or stopping and/or punishing Tarrant for his retaliatory conduct towards Plaintiff, and in fact participated in the retaliatory conduct.

163.    As a direct and proximate result of Tarrant and Stelzer's retaliatory conduct against Plaintiff, she has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, punitive damages, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.  Plaintiff is also entitled to and seeks one million dollars ($1,000,000) punitive damages against each of Tarrant and Stelzer in their individual capacity.

164.    Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

165.    Plaintiff also seeks preliminary and permanent including mandatory injunctive relief ordering Tarrant and Stelzer to restore Plaintiff to her assistant coach position, and enjoining Tarrant and Stelzer from engaging in any further retaliatory action against Plaintiff arising from her discrimination complaints.

WHEREFORE, Plaintiff prays for judgment in her favor and against defendant for compensatory damages in amounts to be proven at trial, plus her expenses, costs and statutory attorneys' fees.

JURY TRIAL IS DEMANDED FOR ALL COUNTS

Respectfully submitted,
Danielle Dobias,
Plaintiff,
By: /s/ Nicholas F. Esposito

Nicholas F. Esposito, Atty. # 0755176
Bradley K. Staubus, Atty. # 6230326
Brittany N. Bermudez, Atty. # 6317591
ESPOSITO & STAUBUS LLP
7055 Veterans Blvd., Unit B
Burr Ridge, IL 60527
(312) 346-2766